

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN        AUSTIN 11, TEXAS

~~ATTORNEY GENERAL~~

ATTORNEY GENERAL

Honorable H. Pat Edwards
Civil District Attorney
Hall of Records
Dallas, Texas

Dear Sir:

> Opinion Number O-3774
> Re: Proceeds of bond
>     funds of Common
>     School Districts.

     We acknowledge receipt of your opinion request of recent date and quote from your letter as follows:

> "The Reinhardt Common School District No. 16 of Dallas County, in the Fall of 1940, by an election duly called and held, voted favorably for the issuance of $35,000.00 Schoolhouse Bonds 'for the purpose of providing funds to be expended in payment of accounts legally contracted in constructing and equipping a public free school building of materials other than wood; installing necessary sanitary improvements and purchasing additional school grounds in and for said district'. In the preparation of preliminary orders and for the purpose of presenting the bond transcript to your department for approval, the School Board hired and paid W. P. Dumas, an attorney-at-law of Dallas County, Texas, the sum of $150.00 attorney's fee, and also paid the sum of $74.50 for the printing of the bonds. When the bonds were offered for sale on March 15, 1941, a joint bid was received from James, Stayart & Davis, Inc. and Beckett, Gilbert & Co., Inc., a true and correct copy of which is herewith enclosed, and which bid you will observe was contingent upon the simultaneous acceptance by the Board of Trustees of the District of the attached contract.

By paragraph 2 of the attached contract it appears these alleged bond buyers agreed that at their expense and with the assistance of the trustees 'to secure and compile all necessary data and information and to prepare all necessary forms and to do all things necessary to a full and fair presentation of application for the sale of said bonds by the District to the State Board of Education for investment in the Permanent School Fund', and in consideration of such services it appears from the contract that the Board of Trustees agreed to pay the purported buyers the sum of $500.00 cash. And, it will be observed further that this contract provided that this sum should be paid regardless of whether the bonds were delivered to these purported buyers or to the State Board of Education.

"As stated above, the Board of Trustees had already contracted to pay Mr. Dumas the sum of $150.00 attorney's fee for preparing the bond transcript and presenting the same to your department, and the sum of $74.50 expense of printing the bonds, and as shown by the attached letter from James, Stayart & Davis, Inc. on March 15th, 1941, when this contract in question was entered into, the School District had already prepared to a great extent the Application Form for presenting the bonds to the State Board of Education, so that it was necessary to do very little to complete this minor part of the proposed services. Therefore, as explained by these buyers, their services consisted in this respect 'almost solely of the primary part of the within described full and fair presentation of Application'. This issue of bonds was duly purchased by the State Board of Education for the price of par and accrued interest plus a premium of $519.99. The County Superintendent of Schools was not advised of this contract, and subsequent to the receipt of the purchase price of the bonds from the State Board of Education, he joined in the payment of the attorney's fee and cost of printing the bonds, but

when presented with a request to join with the Trustees in the payment of $500.00 to these alleged bidders for their so-called services, the effect of which was to require the State Board of Education to bid above par and accrued interest for the bonds, refused to authorize such payment and addressed an inquiry to this office as to the legality of paying from the proceeds of this bond issue $500.00 for alleged services under this contract hereto attached. The School Board has no funds other than the proceeds of this bond issue from which payment may be made.

\* \* \* \* \* \*

"Can the trustees of a common school district pay out of the bond account, which had been legally voted by the people of this district, a fee to proposed bond buyers for compiling data and information on required forms and such other things as might be necessary for a full and fair presentation of Application for the sale of such bonds to the State Board of Education for Investment in the Permanent School Fund?"

This department has heretofore held that all absolutely necessary expenses incurred in the issuance and sale of bonds may be paid out of the proceeds received from the sale of the bonds. Opinion Number O-1312. The determination of necessary expense must be based upon facts peculiar to each issue, the knowledge of which obviously is within the province of the persons charged by law with administering the affairs of the issuing agency. It will be observed that the law has conferred upon the County Superintendent the duty of approving expenditures of common school districts (Article 2693, Revised Civil Statutes) and we gather from the facts stated in the instant matter that such officer has exercised his authority by declining to approve the payment in question. It must, therefore, be presumed by this department that he has possession of the facts, and his judgment thereon cannot be questioned in the absence of a showing that he is arbitrarily abusing the authority vested in him.

Honorable H. Pat Edwards, page 4 (O-3774)


        We, therefore, hold that under the law his
action is conclusive on us.

APPROVED AUG 27, 1941                 Very truly yours

/s/ Grover Sellers               ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL                 By  /s/ Claud O. Boothman
                                         Claud O. Boothman
COB-s:lm                                          Assistant